**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

**ALEX OMAR HERRERA SOLIS,**

Petitioner,

v.

WARDEN, NASSAU COUNTY CORRECTIONAL CENTER, East Meadow, New York;
KENNETH GENALO, Acting Field Office Director, New York City Field Office, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement;
DAVID J. VENTURELLA, Senior Official Performing the Duties of Director, U.S. Immigration and Customs Enforcement;
MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; and
TODD BLANCHE, Acting Attorney General of the United States,

Respondents.

**Civil Action No.** ________________

**PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**
**AND EMERGENCY REQUEST FOR ORDER TO SHOW CAUSE**

**PRELIMINARY STATEMENT**

1. Alex Omar Herrera Solis ("Petitioner"), by counsel, respectfully petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 and moves by Emergency Order to Show Cause and Temporary Restraining Order. This petition is filed on an emergency basis to prevent Petitioner's unlawful transfer or removal.

2. Petitioner has not had an opportunity to interview with counsel. Since Respondents have not yet provided Petitioner with access to any recent detention documents, nor the opportunity

to review them with counsel, the factual allegations here are pleaded upon information and belief, except where otherwise stated.

3. Petitioner reserves the right to amend or supplement this Petition as more facts become available.

## FACTS ON THE CASE

1. This case begins with a pre-dawn raid on a family's driveway. Petitioner Alex Omar Herrera Solis did not hide from the Government. He could not have: the Government itself brought him into its records eight years ago, when he arrived as a thirteen-year-old unaccompanied child, was processed through the Office of Refugee Resettlement, and was released by federal officials to his mother, his ORR-approved sponsor. (See attached Exhibit A – Petitioner's Unaccompanied Children Release Documents). He has lived at an address the Government has on file, appeared at every immigration court hearing ever scheduled, and appeared at every criminal court date in a pending first-offense misdemeanor matter. At approximately 6:00 a.m. on July 29, 2026, he was sitting in his mother's car in the driveway of the family home in Bay Shore, New York, about to leave for work, when officers in approximately six ICE vehicles descended on the residence, entered the property without consent, smashed the windows of the car in which he sat, and seized him by force in front of his mother, his partner, and his two-year-old United States citizen daughter.

2. The arrest transformed a twenty-one-year-old who was living with his family, working for the same Long Island construction employer for approximately three years, supporting a two-year-old citizen daughter, pursuing pending removal proceedings with a perfect record of appearance, and holding a New York Family Court Special Immigrant Juvenile Status finding, into a federal immigration detainee at the Nassau County Correctional Center. It did so without a

judicial warrant, apparently without any warrant or paperwork being shown or served on anyone even after his mother directly asked the officers for one and the detaining ICE officer alleged they had one, without a phone call, and without any meaningful notice or opportunity to be heard before liberty was taken.

3. The Government may point to the pending Suffolk County misdemeanor charge. That charge cannot do the work of due process. It cannot turn a forcible alleged warrantless entry into the curtilage of a home into a lawful arrest. It cannot replace a valid warrant. It cannot substitute for a timely and individualized custody determination under § 1226(a). And it cannot erase the release factors that were obvious before ICE took him: a fixed New York address known to the Government for years, an eight-year history in the Government's own records beginning with his release from ORR custody to his mother, pending removal proceedings with no removal order and no missed hearing, a Family Court order supporting SIJS relief, a pending first-offense charge at which he was at liberty and had appeared at every scheduled date with counsel, a two-year-old United States citizen daughter who depends on him, three years of steady employment, a fear of returning to Honduras, and no criminal convictions of any kind.

4. Petitioner therefore seeks a writ of habeas corpus under 28 U.S.C. § 2241, an emergency order to show cause, an order preserving this Court's jurisdiction and his access to counsel, production of the complete arrest and custody record, and immediate release from unlawful detention.

**Respondents Alone Possess the Record Needed to Justify Custody**

5. This Petition is filed on an emergency basis while Mr. Herrera remains in federal immigration custody at the Nassau County Correctional Center in East Meadow, New York. The

material arrest, custody, warrant, charging, detention, transfer, and immigration court records are in Respondents' possession, custody, or control.

6. Counsel has not yet been able to communicate with Mr. Herrera in detention. Certain allegations are therefore pleaded on information and belief based on the limited information presently available to counsel, including the eyewitness account of Mr. Herrera's mother, who witnessed the arrest and appeared for a legal consultation the same day; the ORR Verification of Release in the family's possession; ICE's online detainee locator; available immigration and criminal information; and counsel's preliminary investigation.

7. Counsel reserves the right to supplement, amend, or conform this Petition once Respondents certify the true cause of detention and produce the records required for meaningful habeas review, and once counsel is able to confer confidentially with Mr. Herrera.

8. No allegation pleaded on information and belief, in the alternative, or under emergency conditions should be construed as a concession that Respondents had lawful authority to arrest, detain, transfer, or remove Mr. Herrera.

**Petitioner Pleads in the Alternative Until Respondents Disclose the True Basis for Detention**

9. Petitioner understands that DHS claims to detain him under 8 U.S.C. § 1226. The remaining questions are whether § 1226(a) or § 1226(c) applies, whether ICE possessed and lawfully executed a valid administrative warrant, and whether DHS made the timely, individualized custody determination required by § 1226(a).

10. Upon information and belief, DHS has not produced the full custody documents, administrative-warrant records, arrest records, A-file, custody determination, proof of service, medical records, or contemporaneous paperwork sufficient to test the legality of custody. When

his mother asked the arresting officers whether they had a warrant, they asserted that they did, but showed and served nothing, then or since.

11. Petitioner therefore pleads in the alternative until Respondents produce the record required by 28 U.S.C. § 2243 and by ordinary habeas practice.

12. Alternative pleading is expressly permitted and is especially appropriate where, as here, the Government has not disclosed the legal theory and complete factual record it claims justify custody. See Fed. R. Civ. P. 8(d)(2)–(3); *Henry v. Daytop Village, Inc.*, 42 F.3d 89, 95–96 (2d Cir. 1994); *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 343 (2d Cir. 1994).

## THE FACTS

### A. Mr. Herrera's Identity, Family, and Current Detention

13. Petitioner Alex Omar Herrera Solis is a native and citizen of Honduras. He was born on October 12, 2004, and is twenty-one years old. His Alien Registration Number is A215-768-856.

14. Mr. Herrera is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Nassau County Correctional Center, 100 Carman Avenue, East Meadow, New York 11554, in Nassau County, within the Eastern District of New York.

15. In the hours after the arrest, ICE's online detainee locator would not disclose even the facility where Mr. Herrera was held, listing his current detention facility only as "Call ICE for Details" and directing inquiries to the ERO Central Islip, New York Sub-Office, (516) 572-4200.

16. Mr. Herrera lives at 1093 Bay Shore Avenue, Bay Shore, New York 11706, with his mother, Brenda Yamileth Solis Lopez; his partner; and their two-year-old daughter. He has lived at that address for approximately two years.

17. Mr. Herrera's daughter is a United States citizen. She is two years old.

18. Mr. Herrera financially supports his household. His partner and daughter depend on him economically, emotionally, and practically.

19. His detention has separated him from his partner and his daughter, cut off his ability to work, and destabilized a household that relied on him every day.

**B. Immigration History: The Government Has Known Mr. Herrera Since He Was Thirteen**

20. Mr. Herrera first entered the United States on or about June 28, 2018, near McAllen, Texas, when he was thirteen years old. He arrived as an unaccompanied minor.

21. Federal authorities took him into custody upon entry and transferred him to the custody of the Office of Refugee Resettlement ("ORR"). He remained in federal custody for approximately three months.

22. On September 18, 2018, ORR released Mr. Herrera from federal custody pursuant to section 462 of the Homeland Security Act of 2002 and section 235 of the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, to the care of his mother, whom the Government vetted and approved as his sponsor. (*See* attached **Exhibit A**.) The Government has known who Mr. Herrera is, and where to find him, ever since.

23. Mr. Herrera has not left the United States since his 2018 entry.

24. Mr. Herrera is in pending removal proceedings before the New York Immigration Court at 26 Federal Plaza.

25. He has appeared at both immigration court hearings held to date, represented by counsel from a nonprofit organization. He has never missed an immigration court hearing. His next hearing remains pending.

26. He has no removal order. He has never been ordered removed and has never been deported.

27. A New York Family Court has issued an order granting Mr. Herrera Special Immigrant Juvenile Status ("SIJS"). Mr. Herrera intends promptly to pursue all available immigration relief through counsel.

28. Mr. Herrera fears returning to Honduras.

29. Upon information and belief, ICE has never required Mr. Herrera to report, has never placed him on an order of supervision, electronic monitoring, or any Alternatives to Detention program, and has never previously suggested that his detention was necessary. For eight years, including throughout his pending removal proceedings, the Government treated his liberty as unremarkable.

**C. ICE Seized Him at Dawn, in the Curtilage of the Family Home, by Breaking the Car Windows Around Him**

30. On July 29, 2026, at approximately 6:00 a.m., Mr. Herrera was sitting inside his mother's vehicle, parked in the driveway of the family residence at 1093 Bay Shore Avenue, Bay Shore, New York, preparing to leave for work.

31. The driveway lies within the property of the residence, immediately adjacent to the home. It is the area where the family parks its vehicles and conducts the daily comings and goings of the household. It is part of the curtilage of the home.

32. Approximately six ICE vehicles arrived at the residence.

33. Upon information and belief, the officers entered the property without the consent of Mr. Herrera's mother or any occupant.

34. Upon information and belief, the officers broke the windows of the vehicle in which Mr. Herrera was sitting.

35. Upon information and belief, the officers violently seized Mr. Herrera shouting, using physical force and threats, and handcuffed him.

36. Upon information and belief, the officers searched Mr. Herrera's body and the vehicle.

37. Mr. Herrera's mother asked the officers why they were arresting her son and whether they had a warrant authorizing them to enter her property. The officers responded that they had a warrant.

38. Upon information and belief, no warrant, judicial or administrative, was shown, served, or left with Mr. Herrera or any member of his family, then or since.

39. Upon information and belief, the officers did not identify themselves before taking Mr. Herrera into custody.

40. Upon information and belief, the officers did not explain why they were arresting him.

41. Upon information and belief, the officers did not provide an interpreter.

42. Upon information and belief, the officers did not allow Mr. Herrera to make a phone call, take his belongings, or make arrangements for his family before taking him away.

43. Upon information and belief, Mr. Herrera did not sign any warrant, consent form, or arrest paperwork at the time of the arrest, and the officers left no documents of any kind.

44. Upon information and belief, no warrant was signed by a judge.

45. The arrest was witnessed by Mr. Herrera's mother, his partner, and his two-year-old daughter.

47. Mr. Herrera was not arrested at a border, a port of entry, or an ICE appointment. He was arrested in his family's driveway, the curtilage of the home, at the address the Government has had on file throughout his pending immigration proceedings, while he was on his way to work.

### D. The Pending Suffolk County Matter Is a First-Offense Misdemeanor Charge at Which He Was at Liberty and Has Appeared at Every Date

48. Mr. Herrera has one pending misdemeanor criminal matter and no criminal convictions of any kind.

49. It is Mr. Herrera's first offense.

50. The criminal court did not remand him. He was at liberty in the criminal case, living in the community.

51. He has voluntarily appeared at all three criminal court dates scheduled to date, represented by counsel.

52. His next criminal court appearance is already scheduled, approximately one month from now.

53. There is no conviction. A pending charge is an accusation, not a finding, and a first-offense charge of this kind is not a predicate for mandatory detention under 8 U.S.C. § 1226(c).

54. Mr. Herrera's record in that case, at liberty, present at every date, represented by counsel, next date on the calendar — is evidence of compliance, not danger or flight. ICE's arrest now deprives him of the ability to appear freely and resolve that matter.

### E. Employment and Community Ties

55. Mr. Herrera has worked in the construction industry for approximately three years, for the same Long Island employer.

56. He has a fixed address in Bay Shore, New York, where he has lived for approximately two years, and government agencies including the immigration court, have had that address on file.

57. If released, he can return immediately to the family residence.

58. His mother and family members are available to transport him to court, immigration appointments, ICE check-ins, and supervision appointments if released.

59. Mr. Herrera is willing to comply with any reasonable ICE supervision conditions if released, and is willing to appear at all immigration hearings, ICE check-ins, and criminal court appearances.

**F. The Factors ICE Should Have Considered Before Taking His Liberty**

60. Before deciding to arrest and detain Mr. Herrera, ICE should have considered that he came to the United States as a thirteen-year-old unaccompanied child and was released from federal custody by the Government itself, to a sponsor the Government approved.

61. ICE should have considered that he is in pending removal proceedings, has appeared at every hearing, has counsel of record, and has no removal order.

62. ICE should have considered that a New York Family Court Order exists granting Mr. Herrera SIJ status, and that he has protection claims to pursue and a fear of returning to Honduras.

63. ICE should have considered that he was at liberty in the pending criminal case, had appeared at all three scheduled dates, and had his next date on the calendar.

64. ICE should have considered that he has no criminal convictions.

65. ICE should have considered his fixed residence of two years, known to the Government; his three years of steady employment with the same employer; and his two-year-old United States citizen daughter who depends on his support.

66. ICE should have considered that in eight years it never once found it necessary to require reporting, supervision, monitoring, or any condition at all.

67. ICE should have considered alternatives to detention, including release on recognizance, bond, reporting requirements, telephone or in-person check-ins, address reporting, electronic monitoring, and other conditions short of imprisonment.

68. Upon information and belief, ICE did not conduct a meaningful individualized custody determination considering those factors before taking Mr. Herrera's liberty.

## G. Mr. Herrera Is Not a Flight Risk

69. There is no indication that Mr. Herrera is a flight risk. He has a partner and a two-year-old citizen daughter in New York; his mother in New York; three years of employment with the same employer; a fixed address of two years known to the Government; pending removal proceedings with a perfect appearance record; a pending criminal matter at which he has appeared at every date; SIJS and protection relief to pursue; and family available to assist with transportation and supervision. He was arrested on his way to work, from the driveway of the address the Government has had on file for years. Those are not facts of flight. They are facts of presence, stability, and compliance.

## H. Mr. Herrera Is Not a Danger

70. Mr. Herrera has no criminal convictions of any kind, and no history of violence, weapons, gangs, or threats. The single pending first-offense misdemeanor charge has not been adjudicated, and he is contesting it with counsel while appearing at every date. There is no final

criminal conviction, and no individualized danger finding by anyone, that could justify treating Mr. Herrera as a categorical danger.

### I. Continued Detention Is Causing Concrete Harm

71. Mr. Herrera's detention has separated him from his partner and his two-year-old daughter, who watched officers smash the windows of the car her father was sitting in and take him away.

72. His detention has prevented him from working and has cut off the income that supports his household.

73. His detention has impaired his ability to coordinate with immigration counsel, to pursue the SIJS relief for which the state-court predicate already exists, and to prepare for his pending immigration court hearing.

74. His detention has impaired his ability to coordinate with criminal defense counsel and to appear freely at his next scheduled criminal court date, approximately one month away.

75. His case requires immediate judicial review because, upon information and belief, he was seized through a forcible, warrantless entry into the curtilage of his family's home, without a judicial warrant, without paperwork, without notice, and without any individualized custody process, and because his continued detention harms his daughter, his family, his employment, his immigration case, and his criminal defense every day it continues.

## JURISDICTION, VENUE, AND PARTIES

76. This Court has jurisdiction under 28 U.S.C. § 2241 because Mr. Herrera is in federal custody and challenges that custody as unlawful under the Constitution, statutes, and regulations of the United States.

77. This Court has authority under 28 U.S.C. § 2243 to issue the writ or order Respondents to show cause and to require Respondents to certify the true cause of detention.

78. This Court has authority under the All Writs Act, 28 U.S.C. § 1651(a), to preserve jurisdiction, prevent transfer or removal that would frustrate habeas review, and order appropriate interim relief.

79. Venue is proper in this District because Mr. Herrera is detained at the Nassau County Correctional Center in East Meadow, New York, within the Eastern District of New York; because he was arrested in Suffolk County, within this District; and because Respondents exercise custody and control over him in this District.

80. The immediate physical custodian is a proper respondent in a core habeas challenge to present physical confinement, and the district where Petitioner is detained is an appropriate forum for review. The Court may also include supervisory immigration officials whose actions and records bear directly on the challenged custody and requested relief. See *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004); 28 U.S.C. §§ 2241, 2243.

81. Respondent Warden of the Nassau County Correctional Center, 100 Carman Avenue, East Meadow, New York 11554, is sued in his or her official capacity as Petitioner's immediate physical custodian. The facility houses federal immigration detainees, including Petitioner, pursuant to arrangements with ICE. If the proper title of the facility head differs, or if another official is Petitioner's immediate custodian, Petitioner requests leave to amend and automatic substitution under Federal Rule of Civil Procedure 25(d).

82. Respondent Kenneth Genalo is sued in his official capacity as Acting Field Office Director for ICE Enforcement and Removal Operations in New York City, and as a supervisory official responsible for Petitioner's arrest, detention, custody classification, transfer, and removal.

The ERO Central Islip, New York Sub-Office, (516) 572-4200, through which ICE directs inquiries concerning Petitioner, operates under the New York City Field Office.

83. Respondent David J. Venturella is sued in his official capacity as Senior Official Performing the Duties of the Director of U.S. Immigration and Customs Enforcement.

84. Respondent Markwayne Mullin, Secretary of the United States Department of Homeland Security, is sued in his official capacity as the head of the Department of Homeland Security.

85. Respondent Todd Blanche, Acting Attorney General of the United States, is sued in his official capacity as the head of the United States Department of Justice.

## LEGAL FRAMEWORK

### A. Section 1226(a) Governs an Interior Arrest of a Long-Present Resident in Pending Removal Proceedings

86. Mr. Herrera was not arrested at the border. He was not arrested at a port of entry. He was not seeking admission when ICE seized him. He entered the United States in 2018 as a child, was released from federal custody by the Government itself, has resided here for eight years, is in pending removal proceedings before the New York Immigration Court, and was arrested in the interior, in the driveway of his family's home.

87. Mr. Herrera is in pending removal proceedings under § 240. He has no final order of removal and no conviction that could trigger mandatory detention under § 1226(c). His arrest and detention therefore fall under § 1226(a), which authorizes discretionary detention only through the procedures Congress and DHS regulations require. His history as an unaccompanied child, his release by ORR to a Government-approved sponsor, and his eight years of residence and compliance reinforce that any renewed custody decision had to be individualized and made under § 1226(a).

88. Section 1226(a) does not authorize ICE to seize and imprison a person first and supply the required process later. It authorizes arrest and detention on an administrative warrant, followed by a genuine, contemporaneous custody determination that considers whether detention is necessary because of danger or flight risk and whether less restrictive conditions will suffice. Mr. Herrera had been living openly at an address known to the Government, appearing in immigration and criminal court, working steadily, and supporting his family. Those facts required individualized consideration before or when ICE took his liberty.

89. Under § 1226(a), detention is discretionary, not automatic. DHS must make a real, individualized custody decision under § 1226(a), considering danger, flight risk, family ties, residence, community ties, compliance history, pending relief, and available alternatives to detention. Mandatory detention under § 1226(c) requires enumerated criminal predicates that Mr. Herrera, who has no convictions, does not have. A later bond hearing, a later charging document, or a later litigation theory cannot cure detention that was unlawful from its inception. See Gopie v. Lyons, No. 25-CV-05229 (SJB), 2025 WL 3167130, at *8–11 (E.D.N.Y. Nov. 13, 2025).

**B. The Alleged Warrantless Entry Into the Home's Curtilage and the Forcible Arrest Violated the Fourth Amendment, 8 U.S.C. § 1357(a)(2), and DHS Regulations**

90. The Fourth Amendment applies to civil immigration arrests and seizures inside the United States. Civil immigration enforcement is not exempt from individualized constitutional, statutory, and regulatory limits. See *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1043 (1984); *Almeida-Amaral v. Gonzales*, 461 F.3d 231, 234 (2d Cir. 2006).

91. The home and its curtilage stand at the core of the Fourth Amendment's protections, and the governing seizure rule comes from *Payton v. New York*, 445 U.S. 573, 585–90 (1980): a warrantless and nonconsensual entry into the home to make even a routine felony arrest is

presumptively unconstitutional absent exigent circumstances, and the warrant that overcomes that presumption is a judicial one. When officers physically intrude upon the curtilage to conduct an arrest, search, or other police business, a Fourth Amendment intrusion has occurred, and it is presumptively unreasonable without a warrant. *Florida v. Jardines*, 569 U.S. 1, 6–7, 11 (2013). The Second Circuit applies these principles directly to curtilage: a warrantless physical entry into the curtilage of a home, without consent or exigency, violates the Fourth Amendment. *Harris v. O'Hare*, 770 F.3d 224, 231–34 (2d Cir. 2014). DHS cannot lawfully detain or arrest a person within the constitutionally protected curtilage of the home without a judicial warrant unless the entry and arrest are justified by a recognized exception to the warrant requirement, such as exigent circumstances or consent. An I-200 administrative warrant, issued by an immigration officer rather than a neutral magistrate, does not itself authorize entry into a home or its curtilage.

92. Two holdings of *Collins v. Virginia*, 584 U.S. 586 (2018), frame the entry here. First, the portion of a driveway where a family parks its vehicle is curtilage, treated as the home itself for Fourth Amendment purposes. Id. at 592–94. Second, a vehicle's mobility — the entire justification for the automobile exception — does not license officers to breach the protection of the home and its curtilage; the Court refused to let that rationale be "untether[ed]" from its justifications to reach a vehicle parked within the curtilage. Id. at 594–98.

93. An ICE administrative form is not a judicial warrant. It is issued by immigration officers, not by a neutral and detached magistrate, see *Johnson v. United States*, 333 U.S. 10, 13–14 (1948), and it confers no authority to enter a home or its curtilage without consent. DHS's own regulation forbids entry into a residence without a proper warrant or the occupant's consent. 8 C.F.R. § 287.8(f)(2). And there is no categorical exigency for civil immigration arrests: even where a suspect actually flees from police in a criminal case, the Supreme Court requires a case-specific

showing of exigency. *Lange v. California*, 594 U.S. 295, 301–05 (2021); cf. *Welsh v. Wisconsin*, 466 U.S. 740, 750–53 (1984) (exigency is disfavored for minor offenses). A civil arrest of a man sitting quietly in his family's parked car is the opposite of exigency.

94. A warrantless civil immigration arrest separately requires both reason to believe that the person is removable and reason to believe that the person is likely to escape before a warrant can be obtained. *See* 8 U.S.C. § 1357(a)(2); 8 C.F.R. § 287.8(c)(2)(ii). The escape-risk requirement is not a decoration. It is a statutory condition on warrantless civil immigration arrests. ICE must have the required facts when it acts; it cannot invent them later.

95. Probable cause and statutory arrest authority must exist at the moment of arrest. Later-created charging documents, post-hoc declarations, or litigation explanations cannot cure a seizure that was unsupported by the required constitutional and statutory facts when made. See *Beck v. Ohio*, 379 U.S. 89, 96 (1964); *United States v. Di Re*, 332 U.S. 581, 595 (1948).

96. Respondents' own conduct at the scene forecloses the warrantless-arrest theory by the statute's plain terms. Section 1357(a)(2) authorizes a warrantless arrest only where the person "is likely to escape before a warrant can be obtained." When Mr. Herrera's mother asked the officers whether they had a warrant, they asserted that they did. The Government cannot have it both ways. If officers already possessed a warrant, then by definition no one needed to act "before a warrant can be obtained," and § 1357(a)(2) supplies no authority at all — the only questions become whether the claimed warrant exists, whether it is judicial, and whether it authorized entry into the curtilage, and an administrative I-200 fails the second and third. If officers did not possess a warrant, then they misrepresented their authority to the homeowner at her doorstep, and they must identify the contemporaneous, particularized facts showing a likelihood of escape. Every

branch of that fork ends in unlawful custody, and Respondents must be required to state which branch they stand on and produce the records that prove it.

97. No escape finding could be supported on these facts in any event. Petitioner was inside his car waiting to go to work. Mr. Herrera was following the most predictable routine a person can have: departing from his home, an address the Government has had on file throughout his pending proceedings, to the job he has held with the same employer for three years, with hearings already on the calendar in two courts, neither of which he has ever missed. Escape necessarily means an attempt at evading apprehension; commuting is its opposite.

98. Nor can Respondents manufacture exigency out of their own tactics. They chose 6:00 a.m.; they staged approximately six vehicles; and they had an obvious, lawful, less-intrusive alternative available within seconds, permitting the vehicle to back out of the driveway and stopping it on the public street, where none of the curtilage protections apply. Officers who bypass an obvious lawful alternative in order to storm constitutionally protected space cannot then invoke the urgency their own choice created.

99. They could also have apprehended Mr. Herrera at any of the multiple criminal court hearings he has attended. They did not do that.

100. Finally, even an arrest supported by valid authority must be executed reasonably. *Graham v. Connor*, 490 U.S. 386, 395–97 (1989). Shattering the windows of a vehicle around a non-fleeing, non-resisting young man and dragging him out by force, in front of his mother, his partner, and his two-year-old daughter, to effect a civil immigration arrest of a person with no convictions and a perfect record of appearance, was an unreasonable manner of execution under any standard — and it corroborates that this was no consensual encounter.

101. Here, Mr. Herrera was seized at dawn in his family's driveway at the address the Government has had on file for years, in pending proceedings with multiple hearings on the calendar, on his way to the same job he has worked for the last three years. Those facts are inconsistent with any unexplained assertion that he was likely to escape before a warrant could be obtained. They are facts of presence, stability, and compliance.

102. Upon information and belief, ICE did not show Mr. Herrera or his family any judicial warrant, did not show or serve an administrative warrant, did not obtain consent to enter the property, did not document an individualized escape-risk finding, did not identify themselves or the reason for arrest as 8 C.F.R. § 287.8(c)(2)(iii) requires, and did not make or serve any meaningful contemporaneous custody determination before taking him into custody — while smashing the windows of the vehicle he sat in.

**C. Post-Hoc Detention Theories Cannot Cure an Unlawful Arrest or Custody Classification**

103. Agency action must stand or fall on the grounds actually invoked by the agency at the time it acted. Respondents may not defend detention by substituting a new litigation theory for the legal authority and factual basis that actually existed when Mr. Herrera was arrested and detained. See *SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943); *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 20–23 (2020).

104. Courts in this Circuit have rejected post-hoc efforts to recharacterize immigration detention authority. See *Yao v. Almodovar*, 813 F. Supp. 3d 461, 476–77 (S.D.N.Y. 2025); *Gopie v. Lyons*, No. 25-CV-05229 (SJB), 2025 WL 3167130 (E.D.N.Y. Nov. 13, 2025).

105. A bond redetermination assumes that DHS first made a valid custody determination under § 1226(a). A later review cannot retroactively supply the warrant, the consent or exigency required to enter the curtilage, the escape-risk finding, the correct statutory authority, or the

contemporaneous individualized custody decision that should have existed before or at the time liberty was taken.

106. Respondents must therefore produce the full arrest, warrant, charging, custody, detention, and immigration-court record showing the actual legal and factual basis for Mr. Herrera's arrest and detention when custody began.

**D. Criminal-History Allegations Cannot Cure a Constitutional Violation or Substitute for Lawful Custody Process**

107. This Court should reject any suggestion that, because Mr. Herrera has a pending misdemeanor charge, his arrest by ICE was lawful.

108. Federal courts in this Circuit have repeatedly ordered release from immigration custody where DHS or ICE violated statutory or constitutional process, even when the petitioner had prior convictions, pending criminal charges, dismissed charges, or other criminal justice contacts. See, e.g., *Rojas Acevedo v. Almodovar*, No. 25-cv-7189 (LJL), 2025 WL 3034183, at *1–2, *17 (S.D.N.Y. Oct. 30, 2025) (granting habeas and ordering immediate release of an LPR with felony and misdemeanor convictions where ICE re-detained him without notice or individualized process); *Kelly v. Almodovar*, No. 25 Civ. 6448 (AT), 2025 WL 2381591 (S.D.N.Y. Aug. 15, 2025) (ordering immediate release despite a prior disorderly-conduct conviction and pending assault/harassment charges); *Gopie v. Lyons*, No. 25-CV-05229 (SJB), 2025 WL 3167130, at *1–3, *10 (E.D.N.Y. Nov. 13, 2025) (ordering release forthwith where an LPR was arrested after a probation check-in for a misdemeanor offense and ICE failed to comply with the arrest-warrant regulations and failed to make a proper custody determination); *Guanga Dutan v. Tellez*, No. 26-cv-00600 (NCM), slip op. at 2–5 (E.D.N.Y. Feb. 11, 2026) (ordering release within twenty-four hours even though petitioner had recently been arrested for a Class A misdemeanor); *H.A. v. Genalo*, No. 26 Civ. 2706 (AT), slip op. at 2, 8–12 (S.D.N.Y. Apr. 28, 2026) (ordering immediate

release where charges had been dismissed and sealed and ICE failed to make an individualized custody determination); *Silva Rueda v. Catletti*, No. 26-CV-2977 (VSB), slip op. at 2–3, 9–10 (S.D.N.Y. May 1, 2026) (ordering immediate release despite an arrest for strangulation and assault, later resolved by a non-criminal violation, because ICE detained petitioner without an individualized § 1226(a) determination and a later bond hearing could not cure the original defect).

109. In numerous § 2241 habeas cases in 2026, judges in this District and the Southern District of New York ordered immediate release for materially similar due-process violations by ICE notwithstanding criminal history far more substantial than Mr. Herrera's single pending first-offense charge. See *Acevedo Terrero v. Tsoukaris*, No. 26-cv-00869 (NCM), slip op. at 2, 5–7 (E.D.N.Y. Mar. 4, 2026) (Merle, J.) (immediate release despite pending class D felony and class A misdemeanor charges; an immigration-judge bond hearing is only a custody re-determination and does not cure an unlawful initial custody determination); *Estrada Alfaro v. Genalo*, No. 26-cv-00761 (LDH), slip op. (E.D.N.Y. Mar. 13, 2026) (DeArcy Hall, J.) (immediate release where petitioner was arrested at a probation office after two DWI convictions and ICE failed to provide pre-detention process, notice, or a meaningful opportunity to respond); *Ipina Hernandez v. Genalo*, No. 26-cv-00137 (VSB), 2026 WL 507739, at *6 (S.D.N.Y. Feb. 22, 2026) (Broderick, J.) (immediate release despite dismissed misdemeanor charges, a prior unprosecuted arrest, and later open misdemeanor and violation charges arising from a vehicle stop); *Cunas Hurtado v. Genalo*, No. 25-cv-09172 (LAK), Judgment at 1 (S.D.N.Y. Dec. 2, 2025) (Kaplan, J.) (immediate release notwithstanding pending criminal matters); *Bautista Sanchez v. Bondi*, No. 26-cv-01700, Order at 2–4 (D.N.J. Mar. 3, 2026) (Semper, J.) (immediate release of a petitioner arrested by ICE inside a courthouse after appearing on open domestic violence charges); and *Batten Herrera v. Blanche*, No. 26-CV-03321 (OEM), slip op. (E.D.N.Y. June 10, 2026) (Merchant, J.) (granting habeas for

a petitioner arrested during a scheduled probation visit while serving probation for a misdemeanor DWI-related case; ICE violated due process by failing to conduct a contemporaneous individualized custody determination under § 1226(a), and pending misdemeanor traffic-related charges did not establish dangerousness or justify continued detention).

110. Estrada Alfaro and Batten Herrera are especially meaningful here. In each, the petitioner had actual DWI-related convictions, not merely a pending first-offense charge and the court still ordered release because the constitutional violation lay in the custody process. Mr. Herrera stands on far stronger footing: he has no convictions at all.

111. Those cases foreclose Respondents' anticipated argument that criminal-history allegations excuse the constitutional violation. They do not. Criminal history may be relevant to a lawful custody determination. It cannot replace one. If the Government believes a pending charge justifies detention, it must say so through a lawful, timely, reasoned, individualized custody determination that gives the person a meaningful opportunity to respond. Respondents did not do that here.

**E. Exhaustion Is Futile and Inadequate**

112. Petitioner seeks release from unlawful custody, not a reweighing of bond. His claim is that Respondents lacked lawful authority to arrest and detain him in the first instance and that custody is unlawful because he was seized in the interior of the United States in the curtilage of his home without the statutory, regulatory, and constitutional safeguards required before liberty may be taken.

113. Section 2241 contains no statutory exhaustion requirement for immigration-detention habeas petitions. Any exhaustion requirement is prudential and yields where administrative remedies are futile, inadequate, or incapable of providing meaningful relief. See

*Howell v. INS*, 72 F.3d 288, 291 (2d Cir. 1995); *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003).

114. A bond hearing cannot cure an unconstitutional entry and arrest. A bond hearing cannot cure the failure to satisfy § 1357(a)(2). A bond hearing cannot cure the absence of the process required at the outset under § 1226(a). A bond hearing cannot retroactively supply a warrant, consent, an escape-risk finding, or a contemporaneous custody decision that did not exist when Mr. Herrera was arrested.

115. Courts in this District and the Southern District have repeatedly excused exhaustion and ordered release where ICE arrested or detained a noncitizen without a lawful initial custody determination or without the process required by § 1226(a) and the Fifth Amendment. See *Rodriguez-Acurio v. Almodovar*, No. 25-cv-06065 (NJC), 2025 WL 3314420, at *31–33 (E.D.N.Y. Nov. 28, 2025); Gopie, 2025 WL 3167130; *Barco Mercado v. Francis*, No. 25-cv-06582 (LAK), 2025 WL 3295903, at *21–22 (S.D.N.Y. Nov. 26, 2025); Kelly, 2025 WL 2381591.

116. Because Respondents' custody is unlawful from its inception and because administrative remedies are futile and inadequate, this Court should excuse exhaustion, order Respondents to certify the true cause of detention under 28 U.S.C. § 2243, and grant immediate release or such other relief as law and justice require.

## CLAIMS FOR RELIEF

### CLAIM ONE: THE ENTRY, ARREST, AND DETENTION VIOLATED THE FOURTH AMENDMENT, 8 U.S.C. § 1357(a)(2), AND DHS REGULATIONS

117. Petitioner repeats and realleges the preceding paragraphs.

118. ICE seized Mr. Herrera in the interior of the United States, in the driveway—the curtilage of his family's home, after entering the property without consent, a judicial warrant, or exigency, and after breaking the windows of the vehicle in which he sat.

119. ICE did not arrest him at the border, at a port of entry, or while he was attempting to enter the United States.

120. Upon information and belief, ICE did not present a judicial warrant to Mr. Herrera or his family before arresting him, did not show or serve an administrative warrant, and did not obtain anyone's consent to enter the property.

121. Upon information and belief, ICE did not identify individualized facts establishing that Mr. Herrera was likely to escape before a warrant could be obtained.

122. Section 1357(a)(2) is conjunctive. ICE needed reason to believe Mr. Herrera was removable and reason to believe he was likely to escape before a warrant could be obtained. Respondents have not shown either statutory requirement, and the entry into the curtilage independently violated the Fourth Amendment, *Payton, Jardines, Harris*, and 8 C.F.R. § 287.8(f)(2), with the driveway's curtilage status established by Collins.

123. Respondents' asserted warrant forecloses their warrantless-arrest theory by the statute's own terms. Officers told Mr. Herrera's mother that they had a warrant. If that is true, § 1357(a)(2) — which applies only where the person is likely to escape "before a warrant can be obtained" — supplies no authority, and Respondents must produce the warrant, establish that it was judicial, and explain how it authorized entry into the curtilage; an administrative Form I-200 does neither. If it is not true, officers misrepresented their authority to the occupant of the home, no warrant existed, and no contemporaneous escape-risk finding has been identified or could be supported. Petitioner pleads both branches in the alternative; each independently renders the arrest, and the custody flowing from it, unlawful.

124. The manner of execution was independently unreasonable. Officers smashed the windows of the vehicle around a non-fleeing, non-resisting twenty-one-year-old and dragged him

out by force, in front of his mother, his partner, and his two-year-old daughter, to effect a civil arrest of a person with no convictions and a perfect record of court appearance. See *Graham v. Connor*, 490 U.S. 386, 395–97 (1989). The destruction of property and use of force corroborate that no consent was given and that no lawful process was displayed.

125. ICE also failed to comply with 8 C.F.R. § 287.8 and the required warrant, identification, and arrest procedures applicable to interior civil immigration arrests.

126. Because the entry and arrest were unlawful when made, later charging papers, later custody papers, or later litigation declarations cannot cure the Fourth Amendment and statutory defects.

127. Respondents should be required to produce the actual arrest, warrant, charging, custody, detention, transfer, video, immigration-court, body-worn camera, surveillance, radio, dispatch, agent-note, database-query, and supervisory-approval records because those materials are necessary to test whether the entry, arrest, and detention complied with the Constitution, the INA, and DHS regulations. See 28 U.S.C. § 2243; 8 U.S.C. § 1357(a)(2); 8 C.F.R. §§ 287.3, 287.8, 236.1, 1236.1.

**CLAIM TWO: DHS UNLAWFULLY DETAINED PETITIONER WITHOUT THE § 1226(a) PROCESS REQUIRED FOR AN INTERIOR ARRESTEE**

128. Petitioner repeats and realleges the preceding paragraphs.

129. At the time of arrest and initial detention, DHS did not identify the statutory basis for detention to Petitioner or his family in any meaningful way.

130. DHS's asserted detention authority is 8 U.S.C. § 1226. Mr. Herrera entered in 2018, was released from federal custody by the Government itself, has resided in the United States for eight years, is in pending § 240 removal proceedings, and was arrested at his home. Because he

has no qualifying conviction under § 1226(c), his detention is governed by § 1226(a), with its warrant requirement, discretionary framework, and individualized custody determination.

131. The governing detention authority is § 1226(a), with its discretionary custody framework, unless the Government proves another statute lawfully applies. Section 1226(c) does not: Petitioner has no convictions, and a pending first-offense misdemeanor charge is not a § 1226(c) predicate. Section 1231 does not: no removal order exists.

132. DHS deprived Petitioner of the discretionary custody process required under § 1226(a) by arresting and detaining him without a lawful and timely individualized determination of danger, flight risk, and available alternatives to detention.

**CLAIM THREE: DETENTION WITHOUT A TIMELY, INDIVIDUALIZED CUSTODY DETERMINATION UNDER THE CORRECT STATUTE VIOLATES DUE PROCESS**

133. Petitioner repeats and realleges the preceding paragraphs.

134. Under § 1226(a), DHS was required to make a real, individualized custody determination based on danger and flight risk, and to consider factors bearing on release, including family ties, residence, employment, pending relief, criminal-court liberty status, the absence of any conviction, compliance with court obligations, and alternatives to detention.

135. DHS did not make a lawful custody determination under § 1226(a) before or contemporaneously with Petitioner's detention.

136. DHS did not meaningfully consider that Mr. Herrera was at liberty in the pending criminal case and had appeared at every date; that he has appeared at every immigration hearing; that he has a fixed address known to the Government, a partner, and a two-year-old United States citizen daughter; that a Family Court order supports SIJS relief; that he has three years of steady employment; that he fears returning to Honduras; and that ICE itself never previously found any supervision necessary in eight years.

137. DHS did not identify individualized facts showing that Petitioner posed a flight risk or danger sufficient to justify detention, and no final criminal conviction exists.

138. A later bond hearing, if any, does not cure the absence of a valid initial custody determination. *See Gopie*, 2025 WL 3167130; *Silva Rueda*, No. 26-CV-2977 (VSB), slip op. at 9–10.

139. Petitioner is entitled to habeas relief and release.

**CLAIM FOUR: RESPONDENTS VIOLATED ACCARDI BY FAILING TO FOLLOW BINDING STATUTES AND REGULATIONS**

140. Petitioner repeats and realleges the preceding paragraphs.

141. Under *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267–68 (1954), an agency must follow its own binding rules. The Second Circuit applies the Accardi doctrine in immigration cases. *Montilla v. INS*, 926 F.2d 162, 166–69 (2d Cir. 1991). The rules at issue protect liberty.

142. ICE was required to comply with the Fourth Amendment, 8 U.S.C. § 1357(a)(2), 8 C.F.R. § 287.8 — including § 287.8(f)(2)'s prohibition on entering a residence without a proper warrant or consent — 8 C.F.R. § 287.3, 8 C.F.R. § 236.1, and 8 C.F.R. § 1236.1.

143. ICE failed to comply with those rules by entering the curtilage of the family home without consent or a judicial warrant, destroying property, arresting and detaining Petitioner without producing a lawful warrant, without the escape-risk showing required under § 1357(a)(2), without complying with § 1226(a), and without a timely individualized custody determination. Likewise, DHS was required to conduct an individualized assessment or determination under the correct detention statute at the time of detention.

144. These failures violated Accardi, the INA, DHS regulations, and due process.

**CLAIM FIVE: A BOND HEARING IS FUTILE AND INADEQUATE BECAUSE IT CANNOT CURE THE ILLEGAL DETENTION**

145. Petitioner repeats and realleges the preceding paragraphs.

146. Petitioner does not ask this Court merely to reweigh bond. Petitioner challenges the Government's threshold authority to enter his family's property, arrest him, and detain him at all.

147. Exhaustion is not jurisdictional in this setting and is excused when administrative remedies are futile, inadequate, or incapable of providing the relief requested.

148. A bond hearing cannot cure an unconstitutional entry and arrest, a warrantless arrest made without the required escape-risk showing, or the failure to make a lawful initial custody determination under § 1226(a). It cannot retroactively supply a warrant, consent, an escape-risk finding, or a contemporaneous custody decision that did not exist when Petitioner was arrested.

149. Habeas is necessary because the administrative process cannot provide prompt and complete relief from unlawful arrest and detention without lawful process.

**CLAIM SIX: RESPONDENTS MUST PRODUCE THE FULL ARREST, CUSTODY, AND IMMIGRATION COURT RECORD NOW FOR HABEAS REVIEW**

150. Petitioner repeats and realleges the preceding paragraphs.

151. Section 2243 requires Respondents to certify the true cause of detention. A conclusory declaration is not enough. The Court cannot decide the legality of custody without the actual records.

152. Respondents should be ordered to produce the complete A-file and all arrest, custody, detention, transfer, removal, and immigration-court records.

153. Required records include, but are not limited to: any judicial warrant; any administrative warrant, including Form I-200 or I-205, with its exact time of issuance; any Form I-213; any Form I-286; any Form I-862 Notice to Appear and proof of service; any custody

determination form; any bond determination or bond denial; any document identifying § 1226(a) or § 1226(c) as the basis for custody; any claimed evidence of consent to enter the property or of exigency; any arrest report; any target packet; any operational plan; any supervisory approval; any database query; any body-worn camera footage; any surveillance footage; any radio transmissions or dispatch records; any photographs of the scene or the damaged vehicle; any property records; the complete Immigration Court record; the ORR and sponsor-release records; and all records concerning Petitioner's custody classification and housing at the Nassau County Correctional Center.

154. This is not ordinary discovery. It is the minimum record necessary for habeas review. If Respondents cannot produce records showing lawful entry, lawful arrest, and lawful detention authority, the writ should issue and Petitioner should be released.

**CLAIM SEVEN: PETITIONER PRESERVES HIS RIGHT TO EAJA FEES IF HE PREVAILS**

155. Petitioner repeats and realleges the preceding paragraphs.

156. Petitioner preserves his right to seek attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, if he prevails or obtains the relief requested. If Petitioner obtains the requested relief, EAJA authorizes an award to a prevailing party in a civil action against the United States unless the Government's position was substantially justified or special circumstances make an award unjust. *See* 28 U.S.C. § 2412(d)(1)(A).

**REQUEST FOR EMERGENCY RELIEF**

Petitioner respectfully asks this Court to issue an Order to Show Cause under 28 U.S.C. § 2243 and to enter temporary relief preserving this Court's jurisdiction and Petitioner's access to counsel. Petitioner requests that the Court:

a) prohibit Respondents from transferring Petitioner outside the Eastern District of New York, or outside New York and New Jersey, absent further order of this Court;

b) prohibit Respondents from removing Petitioner from the United States while this habeas action is pending and until further order of this Court;

c) direct Respondents to provide reasonable, timely, confidential access to counsel, including meaningful in-person legal visitation, phone access, and interpreter access as necessary, and to keep the ICE online detainee locator accurately updated with Petitioner's location;

d) direct Respondents to file, within forty-eight hours, a full return certifying the statutory and factual basis for detention pursuant to 28 U.S.C. § 2243;

e) require production, within forty-eight hours, of all custodial, administrative, DHS, ICE, ORR, warrant, custody, immigration-court, detention, removal, and transfer records supporting Petitioner's arrest and detention;

f) require Respondents to preserve and produce all videos, body-worn camera footage, surveillance footage, radio transmissions, dispatch records, target packets, operational plans, agent notes, database-query records, supervisory approvals, photographs of the scene and of the damaged vehicle, and other evidence concerning the July 29, 2026 entry and arrest;

g) produce Petitioner before this Court as necessary to effectuate meaningful habeas review;

h) grant the writ of habeas corpus and order Petitioner's immediate release from unlawful detention;

i) order that Petitioner shall not be re-detained without notice and an opportunity to be heard before a neutral decisionmaker, where Respondents bear the burden of establishing lawful detention under the correct statutory authority;

j) order Respondents to return all personal property seized from Petitioner at the time of detention and currently in Respondents' custody, possession, or control;

k) award reasonable attorney's fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d), should Petitioner prevail; and

l) grant such other and further relief as the Court deems just and proper.

Dated: July 30, 2026
White Plains, New York

Respectfully submitted,

s/ S. Michael Musa-Obregon
S. Michael Musa-Obregon
MUSA-OBREGON LAW P.C.
140 Grand Street, Suite 307
White Plains, NY 10601
michael@musa-obregon.com
718-803-1000