UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALEX OMAR HERRERA SOLIS<br>*Petitioner*,<br>v.<br>VENTURELLA,<br>*Respondent*. | No. 26 Civ. 4652 (SJB)<br><br>DECLARATION OF DEPORTATION OFFICER HEMIL C. MEJIA |

Pursuant to 28 U.S.C § 1746, I, Hemil C. Mejia, hereby declare under penalty of perjury that the following is true and correct:

1. I am a Deportation Officer at U.S. Immigration and Customs Enforcement ("ICE") within the U.S. Department of Homeland Security ("DHS"). I have served in this capacity since November 2025. Presently, I am assigned to the Fugitive Operations Program with ICE's Enforcement and Removal Operations ("ERO"). As part of my duties, I am responsible for identifying and apprehending aliens who are at-large and are subject to removal proceedings or have been ordered removed from the United States.
2. I have prepared this declaration in connection with a Petition for a Writ of Habeas Corpus filed by the Petitioner, Alex Omar Herrera Solis ("Petitioner"), A215-768-856. As a Deportation Officer, I have access to ICE/DHS's immigration records regarding Petitioner. I was also present for and assisted in the arrest of the Petitioner. The following representations are based on my personal knowledge, review of ICE/DHS administrative and electronic records maintained in the ordinary course of business.
3. Petitioner is a native and citizen of Honduras.

4. Petitioner unlawfully entered the United States on or about June 27, 2018, near Rio Grande Valley, Texas. On or about June 27, 2018, he was encountered and arrested by U.S. Customs and Border Protection ("CBP") who determined Petitioner entered the United States unlawfully through Mexico.
5. On June 27, 2018, CBP issued a Warrant for Arrest of Alien, Form I-200 ("I-200") with respect to Petitioner; the I-200 was served on Petitioner on June 28, 2018. True and correct copies of two versions of the I-200 that were issued on June 27, 2018, and served on Petitioner on June 28, 2018, are attached hereto as Exhibit A.
6. On June 27, 2018, CBP issued a Notice of Custody Determination with respect to Petitioner, informing him that he would be detained by the Department of Homeland Security ("DHS"). True and correct copies of the two versions of the Notice of Custody Determination dated June 27, 2018, are attached hereto as Exhibit B.
7. On June 28, 2018, CBP issued a Notice to Appear, Form I-862 ("NTA") ("First NTA"), to Petitioner, charging him as inadmissible to the United States pursuant to Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General. A true and correct copy of the First NTA is attached hereto as Exhibit C.
8. The First NTA stated that Petitioner was ordered to appear before an immigration judge "AT A PLACE TO BE SET," on "a date to be set" at "a time to be set." *Id.*
9. On June 28, 2018, Petitioner was 13 years old; his birthday is October 12, 2004.

10. When Petitioner was encountered by CPB, he was not accompanied by a parent or guardian; during processing, Petitioner represented to CBP that he came to the United States to live with his mother in Roosevelt, New York.

11. Because Petitioner was an Unaccompanied Alien Child ("UAC") who was not a national or habitual resident of a country contiguous with the United States, he was referred to the U.S. Department of Health and Human Services ("HHS"), pursuant to 8 U.S.C. § 1232(b)(3).

12. On or about June 30, 2018, Petitioner was placed in the custody of the Office of Refugee Resettlement ("ORR"), a division of HHS.

13. On June 30, 2018, ORR transported Petitioner to Southwest Key Fortaleza in Phoenix, Arizona.

14. On September 12, 2018, ICE filed a revised version of the First NTA, which had been updated to state that Petitioner was to appear in immigration court in Phoenix, Arizona, on October 31, 2018, at 8:30 a.m., and to note that Petitioner was a UAC ("Second NTA"), with the Executive Office for Immigration Review ("EOIR"), thereby commencing removal proceedings against Petitioner. A true and correct copy of the Second NTA is attached hereto as Exhibit D.

15. On or about September 18, 2018, Petitioner was released from Southwest Key Fortaleza to a verified family sponsor – his mother, Brenda Yamileth Solis-Lopez, who lived in Roosevelt, New York, who had been determined to be a suitable family member within the meaning of 8 U.S.C. § 1232(c)(2)(A).

16. On October 16, 2018, the immigration court in Phoenix, Arizona, entered an Order stating that, as Petitioner was now living in Roosevelt, New York, the venue for his

immigration proceedings had been changed to the immigration court in New York. A true and correct copy of the Order entered on October 16, 2018, is attached hereto as Exhibit E.

17. On January 17, 2020, Petitioner appeared with his mother and counsel at an initial master calendar hearing before an Immigration Judge at the New York City immigration court, located at 26 Federal Plaza, at which pleadings were taken. Petitioner denied all allegations and the charges of removability. The matter was re-scheduled to August 7, 2020, for an update on Petitioner's applications for relief.

18. The matter was re-scheduled numerous times. Specifically, Petitioner was scheduled for hearings on August 7, 2020, and February 19, 2021. Both times, the hearings were not held due to court closure.

19. Petitioner was scheduled for a Master Calendar hearing at the New York City – 26 Federal Plaza Immigration Court to be conducted on July 31, 2021. That hearing did not occur because, on July 28, 2021, the Immigration Judge entered a document bearing the headings "Decision on Removability" and "Scheduling Order" ("Decision on Removability/ Scheduling Order") stating that the Immigration Court found Petitioner to be removable from the United States as charged. A true and correct copy of the Decision on Removability/ Scheduling Order, together with a document stating that it was mailed to Petitioner's counsel on July 29, 2021, is attached hereto as Exhibit F.

20. DHS records and databases do not include a record of any proceedings in immigration court with respect to Petitioner after July 28, 2021; as DHS records and databases do not affirmatively state that Petitioner's immigration proceedings were administratively closed, dismissed or terminated, or that an order of removal was entered by the

immigration judge, Petitioner's immigration proceedings are considered to be continuing, and he remains subject to the jurisdiction of the immigration court.

21. On June 14, 2026, Petitioner was arrested by the Suffolk County Police Department and charged with (1) Operating a Motor Vehicle With .08 of 1 % Alcohol or More in Blood – First Offense, in violation of New York Veh. and Traf. Law § 1192(02) and (2) for Driving While Intoxicated – First Offense, in violation of New York Veh. and Traf. Law § 1192(03). A true and correct copy of the Misdemeanor Information filed with the Suffolk County First District Court on June 14, 2026, is attached hereto as Exhibit G.

22. On or about July 23, 2026, ICE received information that Petitioner had been arrested and charged with operating a motor vehicle while intoxicated. *See* Exhibit G.

23. On July 23, 2026, ICE prepared an I-200 Warrant for Arrest of Alien ("2026 I-200"), which was signed by Acting Supervisory Detention and Deportation Officer Katherine D. Rey on July 27, 2026. A true and correct copy of the 2026 I-200 is attached hereto as Exhibit H.

24. On July 26, 2026, ICE prepared a memorandum documenting the cancellation of Petitioner's Order of Release on Recognizance, which was signed by ICE ERO Assistant Field Office Director Bryan Flanagan on July 27, 2026. A true and correct copy of the memorandum signed on July 27, 2026, is attached hereto as Exhibit I.

25. On July 29, 2026, I, together with other ICE officers of the Long Island Fugitive Operations Team, conducted a targeted enforcement action with respect to Petitioner because of his unlawful status in the United States, as well as his pending criminal charges.

26. At approximately 6:20 a.m. that day, other officers and I, traveling in unmarked vehicles, pulled up to Petitioner's last known residence and conducted surveillance.

27. At approximately 6:35 a.m. another officer from my team saw an individual exit the Petitioner's last known residence and get into the driver's seat of a vehicle that was parked in the driveway. That officer believed such individual matched the physical description of Petitioner, who was the subject of our targeted enforcement action.

28. The other officers and I pulled our vehicles into the driveway of the residence, behind Petitioner's vehicle, with our emergency lights engaged.

29. The other officers and I approached the driver's side window of the vehicle and identified ourselves as officers with ICE. At that time, Petitioner placed his car in reverse and attempted to back out of the driveway, around our vehicles. Petitioner eventually placed the vehicle in park. Throughout the interaction, the Petitioner refused to roll down his drivers' side window.

30. We then informed Petitioner of the warrant for arrest, showed him a copy of the 2026 I-200, that had been downloaded to an electronic device, and asked Petitioner to exit the vehicle.

31. Petitioner refused the exit the vehicle numerous times despite commands from other officers to do so. Officers also perceived Petitioner to be reaching in his pockets and moving erratically in the vehicle.

32. Based on Petitioner's failure to obey commands, and Petitioner's erratic movements, officers broke the Petitioner's rear driver's side window to gain access to the vehicle.

33. Officers took control of Petitioner and removed a utility knife from his person. At that point, Petitioner was placed in handcuffs and taken into custody.

34. Petitioner was taken to the Central Islip Holding Room for processing and was formally served with the 2026 I-200 upon his arrival, at approximately 7:10 a.m.

35. Although Petitioner is not detained pursuant to INA § 236(a), 8 U.S.C. § 1226(a), and is not a member of the class as defined in *Velesaca v. Decker*, No. 20-cv-1803 (SDNY), a *Velesaca* custody determination worksheet was prepared with respect to him during processing on July 29, 2026. A true and correct copy of the *Velesaca* worksheet prepared with respect to Petitioner on July 29, 2026, as amended on August 3, 2026, to state that Petitioner is not a *Velesaca* class member, is attached hereto as Exhibit J.

36. After processing, at approximately 12 noon on that same day, July 29, 2026, Petitioner was transferred to the Nassau County Correctional Center ("NCCC") located in East Meadow, New York.

37. The next day, July 30, 2026, at approximately 1:40 p.m. Petitioner was checked out of NCCC for transport to the Moshannon Valley Processing Center ("Moshannon Valley") located in Philipsburg, Pennsylvania.

38. Petitioner was checked in to Moshannon Valley at approximately 8:00 p.m. on July 30, 2026.

39. On July 30, 2026, the Immigration Court sent a notice of hearing to Petitioner, informing him of a hearing to take place on August 5, 2026, at the Varick Street Immigration Court in New York City.

40. On July 31, 2026, ICE filed a Form I-830, Notice to EOIR: Alien Address, which informed the Immigration Court that Petitioner was detained at the Moshannon Valley Processing Center. His August 5, 2026, hearing was vacated, as the Varick Immigration Court was no longer the appropriate venue for his case.

41. As of today, August 3, 2026, Petitioner is awaiting a hearing notice from the Elizabeth Immigration Court, which is responsible for handling proceedings for individuals detained at Moshannon Valley.

42. As of today, August 3, 2026, the criminal charges filed against Petitioner on July 14, 2026, in the Suffolk County First District Court remain pending.

43. As of today, August 3, 2026, Petitioner remains detained at the Moshannon Valley Processing Center.

44. Pending completion of his removal proceedings, Petitioner's detention is governed by INA § 235(b)(2)(a), 8 U.S.C. § 1225(b)(2)(a).

I hereby declare under the penalty of perjury that the above statements are true and correct.

Executed this 3rd day of August, 2026

HEMIL C MEJIA
Digitally signed by HEMIL C MEJIA
Date: 2026.08.03 16:56:35 -04'00'

Hemil C. Mejia
Deportation Officer
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security