UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
ALEX OMAR HERRERA SOLIS,

                          Petitioner,

          v.                                          **ORDER**
                                                      26-CV-4652-SJB
DAVID J. VENTURELLA et al.,

                          Respondents.
----------------------------------------------------------------X
**BULSARA, United States District Judge:**

Petitioner Alex Omar Herrera Solis ("Petitioner"), a citizen of Honduras who has

lived in the United States for eight years, was arrested on July 29, 2026, by U.S.

Immigration and Customs Enforcement ("ICE") officers.  (Pet. for Writ of Habeas

Corpus filed July 31, 2026 ("Pet."), Dkt. No. 1 ¶¶ 13, 20, 23, 30; Resp'ts' Letter filed Aug.

3, 2026 ("Resp'ts' Letter"), Dkt. No. 8 at 1–3).  Because Respondents concede that *Barbosa*

*da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026), "counsels treating Petitioner as subject to

8 U.S.C. § 1226(a)," — which would entitle him to certain procedural protections,

including a bond hearing — yet ICE elected to ignore governing law and detained him

under 8 U.S.C. § 1225(b)(2)(A), (Resp'ts' Letter at 3–4), the writ is provisionally granted.

Petitioner arrived in the United States unaccompanied in June 2018 when he was

13 years old.  (Pet. ¶ 20; Resp'ts' Letter at 1–2).  He was placed into the custody of the

Office of Refugee Resettlement, put in removal proceedings, and detained for several

months until he was released by an order of release on recognizance into the care of his

mother, a verified family sponsor.  (Pet. ¶¶ 21–22; Resp'ts' Letter at 1–2).  Nothing

happened in his immigration proceedings between July 2021 and July 2026, and

Respondents appear wholly confused as to the status of proceedings over the last five years. (Resp'ts' Letter at 2). Respondents provide no information, yet at the same time have the audacity to assert that "Petitioner's immigration proceedings are considered to be continuing, and he remains subject to the jurisdiction of the immigration court." (*Id.*). Petitioner is pursuing Special Immigrant Juvenile Status ("SIJS") immigration relief, and has a New York Family Court SIJS finding. (Pet. ¶ 27).

On June 14, 2026, Petitioner was arrested in Suffolk County and charged with two Vehicle and Traffic Law violations for driving while intoxicated. (Resp'ts' Letter at 2). ICE learned of the pending charges around July 23, 2026 and prepared an I-200 arrest warrant that day. (*Id.*). On July 26, 2026, ICE prepared a memorandum cancelling Petitioner's order of release on recognizance. (*Id.*). Both the I-200 and memorandum were signed by a supervisory officer or assistant director on July 27, 2026. (*Id.*).

ICE arrested Petitioner while he was sitting in a vehicle parked in his driveway— they claim he was "making erratic movements" and accordingly broke a car window to effectuate the arrest. (*Id.*). He was transported to the Central Islip Holding Room for processing, and then to the Nassau County Correctional Center ("NCCC"). (*Id.* at 3). He was eventually transferred to the Moshannon Valley Processing Center ("Moshannon") in Pennsylvania. (*Id.*). At the time the Petition was filed, his counsel believed him to still be at the NCCC—ICE's online detainee locator would not disclose the facility in which he was held and merely directed that one call the Central Islip Sub-Office for details. (Pet. ¶¶ 14–15).

Respondents submit that the Court can decide this matter on the submissions. (Resp'ts' Letter at 4). They concede, and all supporting documents confirm, Petitioner was detained pursuant to 8 U.S.C. § 1225(b)(2)(A). (*Id.* at 2 n.1; *see also* Decl. of Hemil Mejia, Dkt. No. 8-1 ¶¶ 35, 44 (stating Petitioner's detention is governed by 8 U.S.C. § 1225(b)(2)(A)); Initial Custody Determination, attached to Mejia Decl. as Ex. J, Dkt. No. 8-2 ("Individual is NOT subject to [§ 1226(a)].")). So too do Respondents concede that *Barbosa da Cunha* is "controlling in this Circuit," and that it "counsels treating Petitioner as subject to § 1226(a)." (Resp'ts' Letter at 4). Indeed, Respondents appear to understand that the only way they prevail in this case is "[i]n the event *Da Cunha* is vacated, stayed, or overruled." (*Id.*). Of course, none of that has happened. And it binds the Respondents—who have failed to adapt their behavior to this legal ruling— and certainly this Court, which is obligated to apply it.

In a footnote, Respondents gesture at an argument that the Court cannot grant relief in this case because Petitioner was transferred out of this District several hours before the Petition was docketed. (*Id.* at 4 n.4). In their response to the writ, Respondents assert that at approximately 1:40 P.M. on July 30, 2026, Petitioner was "checked out" of the NCCC, and later "checked in" to Moshannon around 8:00 P.M., about five hours before the Petition was filed. (*Id.*). But Respondents represented to the Court in a separate letter that Petitioner arrived at Moshannon around 11:15 P.M. that night, about two hours before the Petition was filed. (Resp'ts' Mot. to Amend dated July 31, 2026, Dkt. No. 6 at 1). They offer no explanation for the three-hour discrepancy—in other words, they offer no basis for this Court to credit either assertion

3

as to where Petitioner was at the time of filing. Nor do they offer any basis to distinguish this Court's decision in *Flores-Linares v. Bondi*, No. 26-CV-0298, 2026 WL 179208, at *1 (E.D.N.Y. Jan. 22, 2026), which explained that when Respondents "treat venue like a game of whack-a-mole"—keeping a petitioner's location unavailable to counsel and the public, and then *after* a petition is filed claiming the petitioner had been moved and contesting venue, only providing the Court with uncertain estimates of when exactly they were transferred where—a petitioner is justified in filing where counsel reasonably believed their client was still being held. Once again, just as in *Flores-Linares*, this Court lacks "precise times" of transfers between districts because Respondents continue to convey contradictory information in each subsequent filing and accordingly, venue is not improper on that basis. *Id.* at *3–*5; *see also Valdes Acevedo v. Nassau Cnty. Corr. Ctr.*, No. 26-CV-0250, 2026 WL 184645, at *9–*12 (E.D.N.Y. Jan. 24, 2026).

As this Court has repeated ad nauseam, as the Circuit confirmed in *Barbosa da Cunha*, and as Respondents concede, their practice for initiating and continuing Petitioner's detention was unlawful. *See Barbosa da Cunha*, 175 F.4th at 96. "[B]ecause Section 1225(b)(2)(A) applies only to a noncitizen who is both an 'applicant for admission' and 'seeking admission,' it does not apply to Petitioner." *Id.* at 74. "When the statute says, 'alien seeking admission,' it . . . refers to a noncitizen who is seeking admission *right now*, not one who sought admission in the past but no longer is." *Id.* at 77. It does not apply to people, "like Petitioner, who have nonetheless lived in the United States for a substantial time." *Id.* at 78.

4

The writ is provisionally granted. Respondents are directed to effectuate Petitioner's release by **August 4, 2026 at 5:00 P.M.** and file a letter on the docket confirming Petitioner's release by that time. Respondents are enjoined from detaining Petitioner absent further direction from this Court. Respondents may not use ICE ankle monitors or similar technology to monitor Petitioner, because the Court has granted the writ, and is not resolving this petition on an intermediate basis by imposing bail conditions.

SO ORDERED.

*/s/ Sanket J. Bulsara*
SANKET J. BULSARA
United States District Judge

Date: August 4, 2026
Central Islip, New York